**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| | : | |
| CHRISTINA WINSLOW, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:10-CV-01165 (JCH) |
| | : | |
| v. | : | |
| | : | |
| PAULETTE LEMMA | : | MARCH 9, 2012 |
| Defendant. | : | |

**RULING RE: MOTION FOR SUMMARY JUDGMENT [Doc. No. 23]**

**I.   INTRODUCTION**

Plaintiff, Christina Winslow ("Winslow"), brings this action against Paulette

Lemma ("Lemma") for retaliation[1] for the exercise of rights secured by the First

Amendment to the United States Constitution.  Winslow alleges that she was dismissed

from Central Connecticut State University ("University") because she wrote a letter to

Senator Christopher Dodd stating that the University engaged in discrimination against

older and female graduate students.

Lemma has filed a Motion for Summary Judgment, arguing that no genuine issue

of material fact exists.  Lemma argues that, although she dismissed Winslow from an

academic program at the University, Lemma did not have knowledge of Winslow's letter

at the time of her dismissal.  Winslow opposes the Motion for Summary Judgment,

arguing that she has produced a number of letters and other communications involving

Senator Dodd and many of Lemma's superiors, which led to an investigation into

Winslow's complaint.  Winslow argues that the communication with Lemma's superiors

---

[1] The Complaint characterizes Winslow's claim as one for "retaliation and punishment."
SeeCompl. ¶ 12.  The court will refer to it as a claim for retaliation.

and the investigation into her complaint creates a reasonable inference that Lemma had knowledge of Winslow's letter.

## II.   FACTUAL BACKGROUND[2]

This case arises from Winslow's dismissal from Central Connecticut State University by Lemma, the Associate Vice President for Academic Affairs and the Dean of the School of Graduate Studies.  Winslow was enrolled in a teacher certification program that required students to maintain a minimum grade point average of 2.70.  As a graduate student, she was also required to maintain a 3.00 grade point average in order to stay in good academic standing.  Winslow understood that she could be placed on academic probation or dismissed from her program by dropping below a 3.00 average.

In the spring 2008 semester, Winslow received four failing grades, resulting in an overall grade point average of 2.52.  On June 13, 2008, Lemma sent a letter to Winslow, informing her that she had not met the minimum standards and would be academically dismissed unless she believed there were grounds for an appeal.  Lemma also informed Winslow in this letter that, to try to continue her studies, she could request an academic probation hearing by making an appointment with the Assistant Dean of the School of Education and Professional Studies.  Winslow never made an appointment and, subsequently, Lemma sent Winslow a second letter, informing her that her academic dismissal had been enacted.  On June 13, 2008, Winslow was dismissed from the University, and she did not appeal this dismissal.

---

[2] In connection with a motion for summary judgment, the court relies on the undisputed facts in the parties' Local Rule 56(a) Statements.  If a fact is disputed, the court views the evidence in the light most favorable to the plaintiff.

Before her dismissal, Winslow had written a letter on April 9, 2008, to United States Senator Christopher Dodd stating that,although the University had grants available to non-traditional students, she did not receive one.  She further noted that the University had failed to place her in appropriate field placements.See Defendant's Local Rule 56(a)(1) Statement (Doc. No. 25) at 25.Winslow did not send Lemma a copy of her letter to Senator Dodd.  Winslow'sletter to Senator Dodd wasbrought to the attention of the Commissioner of the Connecticut Department of Higher Education on April 14, 2008.  Winslow's Local Rule 56(a)(2) Statement (Doc No. 28-1) (hereinafter "Pl.'s. L.R. 56(a)(2) Stmt.") at 3.  Winslow's letter was also brought to the attention of the Interim Senior Vice Chancellor for Academic and Student Affairs and the Provost and Vice President for Academic Affairs at Central Connecticut State Universityat least by May 12, 2008.  Id.Finally,Constance Frasier, Director of Communications for the Connecticut Department of Higher Education, was aware of Winslow's letter to Senator Dodd by May 30, 2008.Id.

## III.    STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law."  In re Dana Corp., 574 F.3d 129, 151 (2d Cir.2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party

against whom summary judgment is sought.  See Fed. R. Civ. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir.2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment."  United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir.2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.' "  Wright v. Goord, 554 F.3d 255, 266 (2d Cir.2009) (quoting Fed. R. Civ. P. 56(e)). In determining whether a triable issue of fact exists, the court may only rely on admissible evidence.  SeeABB Indus. Sys., Inc. v. Prime Tech., Inc., 120 F.3d 351, 357 (2d Cir.1997).  Where the opposing party relies on affidavits or declarations, the affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on matters stated."  Fed. R. Civ. P. 56(c)(4).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir.2007)); seealsoHavey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir.2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## IV.    DISCUSSION

Winslow filed suit against Lemma for retaliation for the exercise of rights secured to her by the First Amendment of the Constitution.  Plaintiff's Brief in Opposition to

Motion for Summary Judgment (Doc No. 28) (hereinafter "Pl.'s Brief in Opp.") at 1.

Lemma filed a Motion for Summary Judgment, arguing that there is no genuine issue of

material fact.  Defendant's Memorandum in Support of Defendant's Motion for Summary

Judgment (Doc. No. 23) (hereinafter "Def'sMem. in Supp.") at 1.  Lemma asserts that

she did not have knowledge of Winslow's letter at the time she dismissed Winslow from

the University.  Id.

A plaintiff asserting a First Amendment retaliation claim must advance evidence

establishing: "(1) that the speech or conduct at issue was protected, (2) that the

defendant took adverse action against the plaintiff, and (3) that there was a causal

connection between the protected speech and the adverse action." Garcia v. S.U.N.Y.

Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 106-07 (2d Cir. 2001) (citing Dawes v.

Walker, 239 F.3d 489, 492 (2d Cir.2001))."Although all inferences must be drawn in

favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude

the granting of the [summary judgment] motion." Harlen Associates v. Inc. Vill. of

Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (citing Western World Ins. Co. v. Stack Oil,

922 F.2d 118, 121 (2d Cir.1990)   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586 (1986) (holding that nonmoving party must do more than merely show "some

metaphysical doubt" as to material facts to escape summary judgment)).  On summary

judgment, "the record must render the other possible causes sufficiently remote to

enable the trier of fact to reach a verdict based upon the logical inferences to be drawn

from the evidence, not upon speculation." Estate of Novack by Novack v. R.D.C.

Realty, Inc., 1 F. Supp. 2d 163, 167 (D. Conn. 1998) (internal citations omitted).

Winslow alleges that her speech -- the April 9, 2008 letter to Senator Dodd --was the reasonLemma dismissed Winslow from the University.  Winslow's evidence demonstrating the cause of her dismissal includes the fact that Winslow's letter to Senator Dodd was brought to the attention of the Director of Communications and the Commissioner of the Connecticut Department of Higher Education, in addition to the Interim Senior Vice Chancellor for Academic and Student Affairs and the Provost for Academic Affairs at the University.  Pl.'s. L.R. 56(a)(2) Stmt. at 3.  Winslow argues that the volume of activity at the University relating to Winslow's letter to Senator Dodd and the research conducted into her complaint creates a reasonable inference that Lemma had knowledge of the letter at the time of Winslow's dismissal.Pl.'s Brief in Opp. at 3.  Winslow concludes, therefore, that Lemma dismissed Winslow from the University as a result of Winslow's complaint letter to Senator Dodd.  Id. at 1.

According to Garcia, Winslow has proven the first element of a First Amendment retaliation claim: that her speech is protected by the First Amendment of the Constitution.  Garcia, 280 F.3d at 106-07.  Winslow has not, however, come forward with evidence from which a reasonable jury could infer that Lemma took adverse action against Winslow for her speech.  Winslow concedes that she does not have any direct evidence that Lemma knew of the letter to Senator Dodd or, alternatively, that Lemma was told by a superior to punish Winslow for her speech.  Pl.'s Brief in Opp. at 3.  Winslow argues that the communication with Lemma's superiors and the investigation into her complaint creates a reasonable inference that Lemma had knowledge of Winslow's letter.

Contrary to Winslow's argument, her inference is not reasonable.  She has failed to adduce any evidence to support this inference. The fact that several people (all of whom are superiors of Lemma) knew of the letter to Senator Dodd and that there was also a "volume of activity" in response to Winslow's letter, id., does not reasonably support an inference that Lemma knew of the letter.  No other evidence (for example, a practice of disseminating such complaints to Lemma or correspondence to Lemma by her superiors) has been brought forward by Winslow to support this inference. The inference Winslow sets forth is mere speculation, and according to Harlen Associates, speculation is insufficient to preclude the granting of a motion for summary judgment.  Harlen Associates, 273 F.3d at 499.  A reasonable jury could not find for Winslow because it would require the jury to engage in speculation, which is not permitted.

## V.    CONCLUSION

For the foregoing reasons, the defendant's Motion for Summary Judgment [**Doc. No. 23**] is **GRANTED**.


**SO ORDERED.**

Dated at Bridgeport, Connecticut this 9th day of March, 2012.


                                        /s/ Janet C. Hall_____
                                        Janet C. Hall
                                        United States District Judge

`